Milton MAPP, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 95–291.

Supreme Court of Wyoming.

Dec. 17, 1996.

Sylvia L. Hackl, State Public Defender; and Deborah Cornia, Appellate Counsel, for appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General, for appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN* and LEHMAN, JJ.

* Chief Justice at time of conference.

TAYLOR, Chief Justice.

After appellant was brought before the district court for a second time on allegations that he had violated a condition of his probation, the district court revoked his probation and transferred him to the Wyoming State Penitentiary to serve a term of not less than eighteen months nor more than twenty-four months with credit for time served. Appellant seeks review of the district court's decision, contending that the revocation was based solely on hearsay evidence and, therefore, the evidence was insufficient.

We affirm the district court's decision.

## I. ISSUES

The parties present a single issue for review. Appellant, Milton Mapp (Mapp), phrases the issue as follows:

Did the district court err when it found that sufficient evidence existed to revoke the appellant's probation?

The State of Wyoming, as appellee, responds as follows:

Whether the district court properly revoked appellant's probation?

## II. FACTS

On April 13, 1994, a Casper, Wyoming police officer nearly collided with a car driven by Mapp, who had swerved into the oncoming traffic lane occupied by the police officer. The police officer's attempt to stop the vehicle evolved into a high speed chase which transformed into a foot race when Mapp abandoned his car and continued to elude the police officer. When the police officer caught Mapp and attempted to place him in custody, Mapp struck the police officer in the face and tried to grab the police officer's weapon from its holster. Mapp was charged with felony interference with a police officer, to which he pled guilty on September 16, 1994.

Pursuant to W.R.Cr.P. 32(a), a presentence investigation report filed with the court chronicled an extensive history of alcohol-related offenses and numerous contacts with the police, including several prior convictions. The report also reflected that Mapp had

been receiving treatment for a bi-polar disorder for ten years, including medication which must be taken with regularity to control that disorder. However, the report stated that Mapp denied having an alcohol problem and admitted he had failed to take his medication during the time he committed the present offense due to his belief that he could do without it. The report concluded that "this individual is a walking time bomb."

At the December sentencing hearing, the district court ordered Mapp placed on probation for a term of four years with the conditions, among others, that he complete a counseling program and that he regularly take his medication. Before the district court's order was reduced to writing, however, the State sought a bench warrant for Mapp's arrest and probation revocation based on newly filed property destruction charges arising from an incident on January 2, 1995.

On that day, Mapp entered a Mini–Mart store in Casper in an agitated state and began to shout obscenities at the store clerk. When Mapp left the store, he slammed the door causing the window pane to shatter. After receiving a call from the store clerk, the police found Mapp approximately six blocks away from the store. He was walking down the street wearing a sheathed knife, waving his arms and screaming incoherently. At the probation revocation proceeding arising from this incident, Mapp was allowed to remain on probation, but the district court added the condition that he "enter and successfully complete the program at Community Alternatives of Casper ('CAC') * * *."

On July 24, 1995, five months before Mapp's completion of the Community Alternatives of Casper (CAC) program, the State filed another petition for revocation of probation. As grounds for the request, the petition referred to an affidavit signed by Mapp's probation supervisor which stated that Mapp was terminated from CAC due to his failure to take his prescribed medication, therefore making him unmanageable. On August 8, 1995, the State filed an amended petition for revocation alleging that Mapp had been terminated from the CAC program and was, therefore, in violation of a condition of his probation.

At this second revocation hearing, the district court heard testimony from only two witnesses, Mapp's probation supervisor and Mapp. The probation supervisor succinctly testified that Mapp was terminated from CAC prior to his completion of the program. On cross-examination, the defense elicited an admission from the probation supervisor that he had no personal knowledge regarding the allegation in his affidavit that Mapp failed to take medication, but had relied solely on the information in the report from CAC.

Mapp did not deny he was terminated from the program prior to completion, but testified he was wrongfully terminated due to the hostility of a racist CAC employee. Mapp's testimony was less than clear, but apparently the district court was to infer that the matters contained in the report were based on untrue statements provided solely for the purpose of consummating the CAC employee's vendetta against Mapp.

The CAC report, independently filed with the district court, advised that Mapp was "a moderate management challenge" when he entered the program. However, Mapp's behavior deteriorated over time producing a number of incident reports ranging in severity from noncompliance issues to theft and assault. He was twice removed from the CAC residence for stabilization with medication, but the stabilization had limited success. The report stated that upon his return to the program, Mapp soon became "agitated and aggressive * * *." During the second stabilization attempt, CAC contacted the various doctors who had treated Mapp, but each in turn passed responsibility to the next. When Mapp allegedly began refusing his medication upon his return from the second effort to stabilize his behavior, he was terminated from the program and returned to the custody of the Natrona County Sheriff. The report concluded that, "[w]hen appropriately medicated, [Mapp] can be pleasant and productive." Nonetheless, as his behavior deteriorated, he "became a threat to himself and those around him."

When questioned about his behavior at the CAC program, Mapp's testimony was confused. Direct examination elicited his insis-

tence that he had never refused to take medication and that he believed the only reason he was terminated was because of false allegations made by a CAC employee.

Cross-examination of Mapp, however, prompted the following exchange:

Q He describes a couple of times that they had you placed in the county jail for a few days. They say that was to give you your medications; is that correct?

A Yes, I guess—for what reason, I really don't know. I couldn't really say. But I know I was placed in the Natrona County Jail.

Q How many times did that happen?

A Twice.

Q Now, he also described a situation here where he states, quote, "He became violent, throwing a coffee can into the residence manager station, and physically assaulting a female resident."

A No, there was no recollection of that either. That did not happen either. A female resident did approach me in a shouting manner, and we had a shouting match. But she dissipated away. And there was no throwing of any kind of cup. But the person that did probably say that was that Harold.

Q Again, in his report, Mr. Miller states, "He began refusing his medication, and at this time he was placed into custody." Mr. Miller said you refused to take your medications. Refused, sir, not missed, not forgot, refused.

A No. There was no time that I refused the medication at all. My doctor, Dr. Fries was on—was on the—he had family problems, and he wasn't in town. And he told me, before he left, that I had to take my medication from somebody else. And I felt that I didn't want to take those pills, refused them, because I didn't have to take any pills from anyone. Because they didn't prescribe them, the doctor did. And he did. So I did not refuse any medications.

Q So for some period of time you wouldn't take any pills, because Dr. Fries hadn't given them to you?

A No. I would take them. I'm just stating what my doctor stated to me.

At the close of the testimony, Mapp's counsel asserted that the State had failed to show a violation of a condition of probation because there was no evidence, other than the CAC report, that Mapp had not taken his medication. The State countered that its sole burden was to establish that Mapp had not successfully completed the CAC program, which it had done. The district court found that "the defendant did not successfully complete the Community Alternatives program." After further argument, the district court held that "it would be in the best interests of Mr. Mapp and of society that his probation be revoked * * *."

On October 25, 1995, an order was entered revoking probation and sentencing Mapp to a term of not less than eighteen months and not more than twenty-four months at the Wyoming State Penitentiary, with credit for time previously served at the Natrona County Detention Center and CAC. From that order, this timely appeal followed.

## III. STANDARD OF REVIEW

 A district court's decision to revoke probation and impose a sentence is discretionary and will not be disturbed unless the record shows a clear abuse of discretion. *Gailey v. State*, 882 P.2d 888, 891 (Wyo.1994); *Kupec v. State*, 835 P.2d 359, 362 (Wyo.1992). We review the district court's decision to determine " 'whether or not the court could reasonably conclude as it did.' " *Gailey*, 882 P.2d at 891 (*quoting Martinez v. State*, 611 P.2d 831, 838 (Wyo.1980)). "Upon review, all that is necessary to uphold a district court's decision to revoke probation is evidence that it made a conscientious judgment, after hearing the facts, that a condition of probation had been violated." *Krow v. State*, 840 P.2d 261, 264 (Wyo.1992).

## IV. DISCUSSION

Mapp argues that the revocation of his probation was based solely on the allegations in the report submitted by CAC and, thus, was impermissibly predicated on hearsay evidence without consideration of Mapp's right

to confront the witnesses. Mapp also contends that the district court was required to conduct a balancing test prior to admitting this hearsay evidence. These arguments ignore the admissions of Mapp and misconstrue the differing evidentiary and due process standards which apply to the separate phases of probation revocation proceedings.

■ The proceedings for probation revocation consist of a two-part process. The first part, the adjudicatory phase, requires the district court to determine by a preponderance of the evidence whether a condition of probation was violated. W.R.Cr.P. 39(a)(5). The second, dispositional phase, is triggered only upon a finding that a condition of probation was violated. In this phase, the district court must deliberate not only upon the violation, but also the reasons the conditions were originally imposed and the circumstances surrounding the violation. *Gailey,* 882 P.2d at 891–92; *Minchew v. State,* 685 P.2d 30, 32 (Wyo.1984). After consideration of all these factors, the district court must then determine the appropriate consequences of the probationer's violation.

■ In the adjudicatory phase, the Fourteenth Amendment right to due process and the Wyoming Rules of Evidence apply. W.R.Cr.P. 39(a)(5)(B); *Gailey,* 882 P.2d at 891. In the dispositional phase, only general due process protections continue to attach and the rules of evidence are suspended. *Gailey,* 882 P.2d at 891–92. The due process protections afforded to the separate phases arise from the nature of the probation revocation proceeding:

> "A probation revocation hearing is not a trial on a new criminal charge. It is simply an extension of the sentencing procedure resulting from the conviction of the basic charge, coupled with the requirement that the probationer be afforded due process of law before being deprived of the *conditional* right to liberty granted by probation."

*Gailey,* 882 P.2d at 893 (*quoting Minchew,* 685 P.2d at 31) (emphasis added).

■ The process due a probationer at the adjudicatory stage is found in W.R.Cr.P. 39 and case law. This includes the right to

disclosure of the evidence against the defendant, the right to call witnesses and present documentary evidence, and the conditional right to confront and cross-examine adverse witnesses. *Swackhammer v. State,* 808 P.2d 219, 221–22 (Wyo.1991); *Mason v. State,* 631 P.2d 1051, 1055 (Wyo.1981). "The determination of whether the defendant violated his release agreement must be based on verified facts." *Mason,* 631 P.2d at 1055.

Thus, in *Mason,* and later in *Swackhammer,* we held that probation revocation may not be based solely on the use of hearsay evidence. *Mason,* 631 P.2d at 1055; *Swackhammer,* 808 P.2d at 223. In both cases, the hearsay evidence admitted by the district court directly affected the probationer's ability to confront witnesses at the adjudicatory stage of the proceeding. *Swackhammer,* 808 P.2d at 223 (hearsay evidence admitted for the purpose of showing commission of larceny); *Mason,* 631 P.2d at 1056 (hearsay evidence admitted to establish probationer guilty of burglary). In these cases, we determined that before hearsay evidence is admitted at the adjudicatory stage, the court must conduct a balancing test to weigh the need of petitioner to confront the witness against the practical difficulty of producing the witness at the hearing. *Swackhammer,* 808 P.2d at 223; *Mason,* 631 P.2d at 1056.

We now turn to Mapp's claims in the context of the adjudicatory phase of the proceeding. The terms of Mapp's probation clearly stated Mapp must successfully enter and complete the CAC program. The amended petition to revoke probation notified Mapp that the reason for revocation was Mapp's failure to successfully complete the CAC program. Mapp does not contend that his probation supervisor's testimony regarding the fact of his termination was hearsay. Neither did Mapp deny that he was terminated from the program before successful completion. Thus, the adjudicatory phase of the proceeding was not based on hearsay, but was conclusively established through the testimony of the probation supervisor and the admissions of Mapp.

Mapp contends that the adjudicatory phase of the probation revocation required the State not only to present evidence that he

was terminated from the CAC program, but also to provide non-hearsay evidence that Mapp had failed to take his medication; thus, demonstrating that his termination was justified. We disagree.

■ Once it was established that Mapp did not complete the CAC program, the adjudicatory stage was ended. The *reasons* for Mapp's failure to complete the program were appropriately considered in the second, dispositional phase, of the proceeding. It is here that Mapp was provided an opportunity to demonstrate that his termination from the CAC program was no fault of his own, and, therefore, his violation of a condition of his probation should not result in revocation. *Dickson v. State,* 903 P.2d 1019, 1023 (Wyo. 1995); *Badura v. State,* 832 P.2d 1390, 1392 (Wyo.1992).

■ Mapp erroneously contends that due process obligated the district court to conduct a balancing test prior to admitting hearsay evidence at this stage of the determination. Contrary to Mapp's assertions, neither *Mason* nor *Swackhammer* require the district court to conduct a balancing test when considering hearsay evidence at the dispositional phase. In *Mason,* we specifically noted that the differing evidentiary requirements in the first and second phases of a probation revocation proceeding contemplate the admission of hearsay evidence to assist the court in the dispositional determination. *Mason,* 631 P.2d at 1055. "When the court * * * turns its attention to the second stage of the revocation hearing, hearsay evidence will be useful in determining whether or not to revoke probation in light of the prior finding of a probation violation." *Id.* at 1055 n. 1.

■ Turning to Mapp's claims in the context of the dispositional phase, we initially note that the evidence before the district court was not limited to hearsay. Mapp's equivocal testimony regarding his conduct while at the CAC program could reasonably be construed to support the information transmitted in the CAC report. We defer to the district court's opportunity to assess the credibility of the witness and to make necessary inferences, deductions and conclusions

which may emanate from an appellant's testimony. *Hall v. State,* 911 P.2d 1364, 1367 (Wyo.1996) (*quoting Morris v. State,* 908 P.2d 931, 934 (Wyo.1995)); *Swingholm v. State,* 910 P.2d 1334, 1338 (Wyo.1996).

More importantly, Mapp fails to show what due process was denied by the admission of the CAC report or other documentary evidence considered in the dispositional phase. The allegations in the CAC report were not admitted into evidence during the direct examination of the State's only witness. There is no contention that Mapp did not receive timely notice of the contents of the CAC report or the other documents in his court file. Mapp had ample opportunity to procure the testimony of the same witnesses he now claims he was not allowed to confront, and gives no explanation why he did not do so. Despite his knowledge of the factual allegations regarding the circumstances of his termination from the CAC program, Mapp made the deliberate choice to rely solely on his own testimony to challenge the accuracy of the allegations in the CAC report.

■ Due process is not violated when the probationer creates the circumstances which are the basis for his due process claim. Mapp's reliance on erroneous conclusions regarding the State's burden in this case resulted in a strategy to forego the opportunity to present evidence at the dispositional phase. In other words, Mapp was not prevented from confronting adverse witnesses; he chose that route.

In this case, the record presents abundant evidence that the district court's decision reflects a conscientious judgment after hearing the facts. The testimony during the adjudicatory phase was uncontested. Mapp failed to successfully complete the CAC program. During the dispositional phase, Mapp's testimony could reasonably be construed to support the information contained in the CAC termination report. Moreover, Mapp was singularly familiar to the court, this being the second time he appeared to explain his failure to comply with the conditions of his probation.

The district court also had the guidance of the presentence investigation report previ-

ously filed for Mapp's first sentencing hearing. This report contained numerous instances occurring over a period of time where Mapp was engaged in conduct which could have resulted in serious injury to himself or others. The incidents related in the CAC termination report were merely a continuation of Mapp's historic inability to control his behavior.

While we have recognized that it would be fundamentally unfair to revoke the probation of a defendant whose failure to comply with his probation conditions resulted from factors beyond his control, "a court cannot be prevented from revoking probation in situations where the probationer's conduct is beyond his control and such conduct creates a threat to society." *Kupec*, 835 P.2d at 362. Consequently, whether Mapp's second failure to comport with the conditions imposed by his probation was due to his willful refusal to take medication or due to the nature of his illness, the evidence before the district court was more than sufficient to support its determination that Mapp could not continue in a probationary status without posing a threat to himself or others.

## V. CONCLUSION

 The violation of a condition of probation was conclusively established by the admission of Mapp that he failed to complete the CAC program. The evidence before the district court, including the testimony of Mapp and various reports submitted by authorized agencies to the district court, was sufficient to support the district court's determination that probation should be revoked and the original sentence imposed. Therefore, we affirm the order of the district court.