2008 WY 121

**Dawson A. REECE, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. S–07–0296.

Supreme Court of Wyoming.

Oct. 9, 2008.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Graham M. Smith, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Dawson A. Reece challenges his probation revocation, stating that the terms of his probation failed to specify the required, and the prohibited, conduct, and that the district court did not make adequate findings to justify the revocation. On appeal, we affirm.

## ISSUES

[¶ 2] Reece presents two issues for review:

1. WERE [REECE]'S DUE PROCESS RIGHTS VIOLATED BY THE NON-SPECIFICITY OF THE TERMS OF HIS PROBATION AND A FAILURE TO ADVISE HIM OF THE CONDUCT THAT WAS REQUIRED AND PROHIBITED?

2. DID THE TRIAL COURT'S FAILURE TO MAKE SPECIFIC FINDINGS REQUIRED BY LAW AMOUNT TO ARBITRARY AND CAPRICIOUS ACTION AND AN ABUSE OF DISCRETION?

The State rephrases the issues as follows:

1. THE TERMS OF [REECE]'S PROBATION WERE SUFFICIENTLY SPECIFIC AND HE WAS PROPERLY ADVISED OF THE TERMS OF HIS PROBATION; THEREFORE, HIS DUE PROCESS RIGHTS WERE NOT VIOLATED.

2. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DID NOT MAKE EXPRESS FINDINGS OF FACT—BEYOND ACCEPTING [REECE]'S OWN ADMISSION THAT HE VIOLATED A TERM OF HIS PROBATION—TO SUPPORT ITS FINDING THAT A PROBATION VIOLATION OCCURRED.

## FACTS

[¶ 3] In August of 2005, Reece was charged with two counts of kidnapping, two counts of aggravated assault, one count of felonious restraint, one count of domestic violence, and one count of cruelty to animals. Pursuant to a plea agreement, Reece pled guilty to one count of felonious restraint and one count of aggravated assault, with the remaining charges dismissed. Concurrent prison terms of three to five years and five to eight years were imposed. The court recommended that Reece complete the Boot Camp program, and contemplated that if he successfully completed Boot Camp, Reece would be transferred to an Adult Community Cor-

rections (ACC) program to be followed by three years of supervised probation.

[¶ 4] Reece successfully completed Boot Camp, and on June 13, 2007, was released from custody, placed on probation, and transferred to the Wyoming Substance Abuse Treatment and Recovery Center (WYSTAR), a residential treatment facility in Sheridan. The WYSTAR placement occurred after Reece was denied admission to ACC and intensive supervised probation.

[¶ 5] On July 18, 2007, the State filed a petition to revoke Reece's probation, alleging that Reece violated the terms of his probation by failing to successfully complete the WYSTAR program. Reece was discharged from WYSTAR because he was "unsuccessful under criteria for readiness for change." A WYSTAR clinician also indicated that "because of Reece's intimidating verbal behavior, it became necessary to discharge him in immediate fashion."

[¶ 6] Reece's probation was revoked. The court stated that Reece "voluntarily admitted violating his probation as alleged in the Petition for Revocation of Probation and the accompanying affidavit and [Reece] provided a sufficient factual basis to support his admission." Both of Reece's sentences were reinstated, but the court again suspended the five to eight year sentence in favor of three years of supervised probation, following the completion of the three to five year sentence.

[¶ 7] This appeal followed.

## STANDARD OF REVIEW

[¶ 8] As we stated in the case, *In Re CT*, 2006 WY 101, ¶ 8, 140 P.3d 643, 646 (Wyo.2006):

The appellant's claim that his constitutional due process rights have been violated is reviewed *de novo* by this Court. *Meyers v. State*, 2005 WY 163, ¶ 8, 124 P.3d 710, 714 (Wyo.2005). The party claiming an infringement on his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. *DH v. Wyo. Dep't of Family Servs. (In re "H" Children)*, 2003 WY 155, ¶ 38, 79 P.3d 997, 1008 (Wyo.

2003), *reh'g denied* (January 13, 2004). Generally, sentencing decisions are reviewed for an abuse of discretion. *Bitz v. State*, 2003 WY 140, ¶ 7, 78 P.3d 257, 259 (Wyo.2003). Such discretion is limited, however, inasmuch as a court may not enter an illegal sentence. *White v. State*, 934 P.2d 745, 746 (Wyo.1997). A sentence is illegal if it violates the constitution or other law. *Martinez v. State*, 2002 WY 10, ¶ 9, 39 P.3d 394, 396 (Wyo.2002). An "error of law committed by the court under the circumstances" is an abuse of discretion. *White*, 934 P.2d at 746 (quoting *Garcia v. State*, 777 P.2d 603, 607 (Wyo.1989)). If there was no objection below, alleged errors are reviewed under our plain error standard, where the appellant must show (1) a clear record of the alleged error; (2) the violation of a clear and unequivocal rule of law; (3) denial of a substantial right; and (4) material prejudice. *Butcher v. State*, 2005 WY 146, ¶¶ 29, 33, 123 P.3d 543, 552, 553 (Wyo.2005).

## DISCUSSION

### *Probation Revocation/Due Process*

[¶ 9] Reece's first issue on appeal is that his due process rights were violated because the terms of his probation failed to specify the required, and the prohibited, conduct. The State responds that the terms of probation were specific enough and that due process was not violated.

[¶ 10] Revocation of probation is largely governed by court rule, W.R.Cr.P. 39. Under Rule 39, the State is required to establish the violation of the conditions of probation alleged in the petition by a preponderance of the evidence. W.R.Cr.P. 39(a)(5).

[I]n order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must be willful, or, if not willful, must presently threaten the safety of society.

*Messer v. State*, 2006 WY 141, ¶ 9, 145 P.3d 457, 460 (Wyo.2006).

The proceedings for probation revocation consist of a two-part process. The first part, the adjudicatory phase, requires

the district court to determine by a preponderance of the evidence whether a condition of probation was violated. W.R.Cr.P. 39(a)(5) The second, dispositional phase, is triggered only upon a finding that a condition of probation was violated. In this phase, the district court must deliberate not only upon the violation, but also the reasons the conditions were originally imposed and the circumstances surrounding the violation.

*Mapp v. State*, 929 P.2d 1222, 1226 (Wyo. 1996). "Willfulness is determined at the dispositional phase of the proceedings." *Sinning v. State*, 2007 WY 193, ¶ 10, 172 P.3d 388, 390 (Wyo.2007). As a general rule of criminal law, probationary conditions must be specific, but general conditions are acceptable if specific guidelines will follow:

> Generally, the probationer should be apprised of the conditions with which he or she must comply, and the court should state in its order the terms and conditions on which it grants the suspension or probation. . . . In order to be enforceable, a condition of probation must not be vague, indefinite, or uncertain, and a general condition of probation is permissible only so long as it is contemplated that the court or its designee will provide the probationer with reasonable, specific direction within the ambit of the initially expressed general condition, and such guidance is in fact given.

24 C.J.S. *Criminal Law* § 2151 at 226 (2006) (internal footnotes omitted).

[¶ 11] Unfortunately for the parties in this appeal, they did not have the benefit of our recent opinion in *Edrington v. State*, 2008 WY 70, 185 P.3d 1264 (Wyo.2008). Similar to the facts here, Mr. Edrington sought review of his probation revocation after he was terminated from an inpatient treatment program, the completion of which was a condition of his probation. The difference between the two cases, however, is that in *Edrington*, both sides readily agreed that the defendant failed to complete the program assigned to him, and that he was terminated from the program because he violated its rules. Here, Reece contends that he was not in violation of the rules, as they were not spelled out for him. Edrington's justification for not following the rules was that he suffered from a mental illness. However, upon review, this Court concluded that Edrington's mental illness did not prevent him from understanding the rules of his program, or the nature and consequences of his actions. Accordingly, in our estimation the district court did not abuse its discretion when it revoked Edrington's probation pursuant to W.R.Cr.P. 39 and reinstated his full sentence.

[¶ 12] Though the facts of *Edrington* and this case differ slightly, we are able to take away from *Edrington* its main message—that violating a main condition of one's probation is enough for revocation. Here, Reece contends that the actual terms of his probation failed to specify the required, and the prohibited, conduct. However, the probation order clearly stated that Reece "must successfully complete the WYSTAR Resident Treatment Program." Reece was aware that his completion of the program was a requirement of his continued probation and was aware that by failing to complete the program, he would violate the terms of his probation. Reece stated the following at his probation revocation hearing:

> [DEFENSE COUNSEL]: You were discharged from the WYSTAR program?
>
> [REECE]: It was the 11th day of July.
>
> [DEFENSE COUNSEL]: But you didn't complete that program, and they discharged you, correct?
>
> [REECE]: Yes.
>
> [DEFENSE COUNSEL]: You knew that—so that was part of your probation, to complete that program?
>
> [REECE]: Yes, sir.

Also, Reece's probation officer met with him to tell him to "follow the rules" and "not to intimidate or act upset or angry."

[¶ 13] The State refers us to *United States v. Gallo*, 20 F.3d 7, 12 (1st Cir.1994), which held:

> [T]hough a probationer is entitled to notice of what behavior will result in a violation, so that he may guide his actions accordingly, fair warning is not to be confused with the fullest, or most pertinacious, warning

imaginable. Conditions of probation do not have to be cast in letters six feet high, or to describe every possible permutation, or to spell out every last, self-evident detail. Conditions of probation may afford fair warning even if they are not precise to the point of pedantry. In short, conditions of probation can be written—and must be read—in a commonsense way.

We are of the same mind. After a thorough review of the record on appeal, we find nothing that leads us to a conclusion that Reece's due process rights were violated. Reece was fully aware that his successful completion of the WYSTAR program was a valid and essential requirement of his continued probation. He cannot now complain that he received inadequate notice as to what was required and prohibited within the terms of his probation. Rather, the revocation of his probation was entirely within the lower court's discretion, and we affirm.

### *Probation Revocation/Findings of Fact*

[¶ 14] Reece's second and final argument on appeal is that the district court failed to make adequate findings to justify the revocation of his probation. He complains that the court did not specify the probation condition that was violated, find that the probation violation was willful, or provide reasons for the revocation. In response, the State insists that the district court's findings were adequate, and that given Reece's admission that he did not complete the WYSTAR program, the court properly found that Reece violated his probation.

[¶ 15] As we stated above, probation revocation proceedings are governed by W.R.Cr.P. 39, and we have previously stated that the process consists of two parts:

The first part, the adjudicatory phase, requires the district court to determine by a preponderance of the evidence whether a condition of probation was violated. The second, dispositional phase, is triggered only upon a finding that a condition of probation was violated. In this phase, the district court must deliberate not only upon the violation, but also the reasons the conditions were originally imposed and the circumstances surrounding the violation.

After consideration of all these factors, the district court must then determine the appropriate consequences of the probationer's violation.

*Mapp*, 929 P.2d at 1226. Though Reece is seemingly unclear on "what the specific violation of probation was or what the probation revocation is based upon," we find clear support in the record that the revocation was based upon Reece's failure to complete the WYSTAR program, which was an explicit condition of his probation.

[¶ 16] The district court relied upon Reece's admission that he was discharged from WYSTAR during the revocation hearing. The court also relied upon the following testimony from Reece, also from the revocation hearing:

[Defense Counsel]: You were discharged from the WYSTAR program?

[Reece]: It was the 11th of July.

[Defense Counsel]: But you didn't complete that program, and they discharged you, correct?

[Reece]: Yes.

[Defense Counsel]: You knew that—so that was part of your probation, to complete that program?

[Reece]: Yes, sir.

. . . .

The Court: All right, I find there is a factual basis for the admission. The admission has been made voluntarily.

The court also heard from Reece's WYSTAR Clinician, Byron Lee, and Reece's probation officer, Jim Fudge, both of whom confirmed that Reece did not complete WYSTAR. Lee testified at length about Reece's WYSTAR experience. First, he stated that he had concerns about Reece's "willingness to change, combative mentality, and [defiant] behaviors." Lee also testified that Reece's unwillingness to change was exacerbated by "a number of ill feelings and resentment towards the legal system and the victim in the case," and that he appeared "to [have] an inability to fully accept and hold himself accountable to those standards and move on." Lee discussed Reece's "vulgar language . . . and extreme and unhealthy thoughts on gender roles." Lee also stated:

There comes a point where we really look at a willingness to change at this facility, because we have to look at and honor the 30 other guys we have here in treatment also. And in order to do that, you know, that openness and honesty is invited and it is necessary, because that does give us the therapeutic opportunity to work through that. [Reece] was good at bringing that stuff out; however, from—my opinion is, you know, the ability for a man to disagree, and then from [Reece]'s perspective in my opinion, there was a barrier put up saying, 'I will not do this. I am not going to go and proceed with this.' "

[¶ 17] Along with testimony, the court also considered the *Petition for Revocation of Probation,* which bolstered the court's decision to revoke. Attached to the petition were several documents, including an affidavit by Fudge, a letter from Fudge to the State's attorney, and a letter by Byron Lee to the district court. In Fudge's letter, he stated that, "... WYSTAR could provide him classes in anger management but that the anger management classes were 'bullshit' and that he would not apply it once he is on the street." In Lee's letter, he summed up Reece's time at WYSTAR as follows:

During treatment, [Reece] demonstrated uneven progress. At times, [Reece] appeared invested in the treatment experience; however, clinical staff had concerns about his willingness to change, combative mentality, and defiant behaviors. These concerns were based on [Reece's] unwillingness to be open-minded to input and his strong negative bias against staff and the legal system. His verbal disrespect for clerical, mentoring and clinical staff created significant tension and became a safety concern. Throughout his treatment, [Reece] minimized the presence of his aggressive nature and combative verbal tactics. He stated to his clinician that, 'I will never use' the information provided to him

through domestic violence and anger management classes in his life outside of treatment.

. . . .

Because of Mr. Reece's intimidating verbal behavior it became necessary to discharge him in immediate fashion, and a continuing care plan was not devised, as the client was released to the custody of the Sheridan County Probation and Parole.

[¶ 18] Based upon Reece's admission that he did not complete the WYSTAR program, as well as the testimony heard and documents reviewed by the district court, we conclude it was not an abuse of discretion for the district court to revoke Reece's probation. Furthermore, the district court had a more than adequate factual basis upon which to base the revocation. The court expressly found that Reece knowingly admitted to his violation. Only after contemplating the information it had before it did the court make its decision that Reece's violation warranted probation revocation.

## CONCLUSION

[¶ 19] After finding that Reece willfully violated the rules of his probation by failing to complete his inpatient treatment program, it was not a violation of Reece's due process rights, nor was it an abuse of discretion for the district court to conclude that his probation should be revoked. Furthermore, the court's factual basis for revocation was more than sufficient.

[¶ 20] Affirmed.