2010 WY 135

**Robert L. FOSTER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–09–0232.

Supreme Court of Wyoming.

Oct. 7, 2010.

Representing Appellant: Diane Lozano, State Public Defender; Tina Kerin, Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel, Wyoming Public Defender Program.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Graham M. Smith, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1]   Robert L. Foster challenges the order of the district court revoking his probation and reinstating his original prison sentence. We affirm.

## ISSUES

[¶ 2]   Foster presents the following issues:

I.   Were all of the violations of probation proven by a preponderance of the evidence?

II.   Did the trial court consider unproven violations in the dispositional phase of the revocation hearing?

## FACTS

[¶ 3]   In March 2007, Foster was charged with two counts of felony property destruction under Wyo. Stat. Ann. § 6–3–201(Lexis-Nexis 2009)[1] for his part in a vandalism spree. Pursuant to a plea agreement, Foster pled no contest to one count of property destruction on October 22, 2007, in exchange for dismissal of the other charge. In accordance with the terms of that agreement, the district court sentenced Foster on January 3, 2008, to a suspended term of imprisonment of four to seven years, placed him on four years of supervised probation under specified terms and conditions, and ordered him to pay restitution in the amount of $8,570.47.[2]

[¶ 4]   At the sentencing hearing, the district court made clear that restitution was the integral component of Foster's probation. Foster indicated that he could pay restitution at the rate of $1,000.00 per month, starting on the 15th of January. Despite that representation, Foster never paid anything toward his restitution obligation in January or February.

[¶ 5]   Foster eventually entered into a restitution payment plan, which the district court approved on March 4, 2008, that stated:

I, Robert L. Foster, agree to pay within the term of probation, minimum monthly payments of *$200.00* per month beginning March 2008, until total due is paid in full. I further agree that if I am struggling on a particular month, I will pay no less than $25.00 per month. [Emphasis in original.]

Thereafter, Foster made a restitution payment of $100.00 on March 10 (an amount authorized by his probation agent) but did not make another payment until June 2, at which time he paid only $25.00.[3] That minimal payment was followed by a payment of $100.00 on July 2.

---

* Chief Justice at time of expedited conference

1. § 6–3–201 provides in pertinent part:

   (a) A person is guilty of property destruction and defacement if he knowingly defaces, injures or destroys property of another without the owner's consent.

   (b) Property destruction and defacement is:
   * * * *

   (iii) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the cost of restoring injured property or the value of the property if destroyed is one thousand dollars ($1,000.00) or more.

   (c) If a series of injuries results from a single continuing course of conduct, a single violation of this section may be charged and penalties imposed based upon the aggregate cost or value of the property injured or destroyed.

2. As part of the plea agreement, Foster had agreed to pay the amount of restitution ordered, which included both charged and uncharged acts of property destruction.

3. The April payment was expressly waived by his probation agent so he could pay for a counseling-related evaluation and polygraph.

[¶ 6] On July 18, 2008, the State filed a petition to revoke Foster's probation, alleging that Foster had failed to make regular restitution payments as required. The petition also alleged the following probation violations: Foster failed to attend Pretreatment Group at Southwest Counseling Services; he failed to obtain steady employment in a timely manner; he violated the law by committing the offense of "hit and run;" he failed to be honest and compliant with law enforcement; he refused to cooperate with his probation agent and therapist in order to attend recommended counseling at Southwest Counseling Services; and he refused to apply for the Intensive Supervision Program (ISP) as directed by his probation agent. The State subsequently amended the petition to include the allegation that Foster failed to inform his probation agent about a vehicle he possessed and used. Foster denied the allegations.

[¶ 7] After several continuances, the district court conducted a revocation hearing on October 23, 2008. At the conclusion of that hearing, the district court eliminated the failure to attend counseling at Southwest Counseling Services and the failure to notify his probation agent about the vehicle as grounds for revocation of probation. The district court, however, found sufficient evidence proving the other allegations and concluded that Foster had violated the terms of his probation. The court revoked Foster's probation and ordered him to serve the underlying four-to-seven-year prison sentence. This appeal followed.

## DISCUSSION

[¶ 8] Revocation proceedings are largely governed by W.R.Cr.P. 39 and consist of a two-part process. The first part, the adjudicatory phase, requires the district court to determine by a preponderance of the evidence whether or not a condition of probation has been violated. W.R.Cr.P. 39(a)(5). This determination must be based on verified facts and must be made in accordance with constitutional due process requirements and the Wyoming Rules of Evidence. *Mapp v. State*, 929 P.2d 1222, 1226 (Wyo.1996). The second part, the dispositional phase, is triggered only upon a finding that a condition of

probation was violated. *Id.* During this phase, the district court must determine the appropriate consequences of the probation violation. In making this determination, the district court must consider not only the violation, but also the reasons the condition was originally imposed and the circumstances surrounding the violation. *Id.*; *Gailey v. State*, 882 P.2d 888, 891–92 (Wyo.1994); *Minchew v. State*, 685 P.2d 30, 32 (Wyo. 1984).

[¶ 9] We review probation revocation proceedings under our abuse of discretion standard:

A district court's decision to revoke probation and impose a sentence is discretionary and will not be disturbed unless the record demonstrates a clear abuse of discretion. *Mapp v. State*, 929 P.2d 1222, 1225 (Wyo. 1996). We review the district court's decision to determine whether the court could reasonably conclude as it did. *Id.* "Upon review, all that is necessary to uphold a district court's decision to revoke probation is evidence that it made a conscientious judgment, after hearing the facts, that a condition of probation had been violated." *Sweets v. State*, 2003 WY 64, ¶ 9, 69 P.3d 404, 406 (Wyo.2003).

*Forbes v. State*, 2009 WY 146, ¶ 6, 220 P.3d 510, 512–13 (Wyo.2009).

[¶ 10] During the adjudicatory phase of the revocation proceeding in this case, the district court found Foster had committed six different probation violations. Foster challenges each of these findings on a variety of grounds, including insufficient proof and alleged due process violations, and asserts the district court erred in reaching these conclusions. He further claims that error was exacerbated when the district court relied on these violations as a basis for revoking his probation and reinstating the original prison sentence. In essence, Foster contends that if one of the violations was unsubstantiated, then the district court's consideration of that violation tainted its dispositional decision, necessitating a new dispositional hearing.

[¶ 11] This is not the law. A single proven violation is all that is necessary to revoke probation. *See, e.g., Swackhammer*

*v. State*, 808 P.2d 219, 225 (Wyo.1991). Thus, no matter how many violations are allegedly proven, a district court can either consider each violation individually or consider them as a whole. Should a district court single out one violation, what is then required of the district court is that, in deciding whether to revoke probation based on the one violation, it must conscientiously consider the violation, the reasons for the defendant's failure to comply with the terms and conditions and the reason those terms and conditions were imposed.

[¶ 12]   Applying these principles to the instant case, it is clear the district court complied with its duties. Even though Foster disputes the findings of other violations, it is indisputable that Foster violated the terms of his probation by failing to pay restitution for the month of May 2008.[4] In the dispositional phase, the district court unambiguously stated that the reason it was revoking probation and reinstating the original sentence was because of his failure to pay restitution. The district court reasoned:

> You have not taken responsibility for your actions, and I think it's a little too late to say, well, give me another chance,

and I'll do what I said I would do a year ago. . . .

> As I told you back in October a year ago, the only reason I was accepting that plea agreement was for you to make restitution to those victims because I felt at that time that you deserved to go to prison . . . based on your record and your actions with 53 victims.

The district court did not mention any of the other alleged violations.

[¶ 13]   Under the specific facts and circumstances of this case, we are comfortable determining that the existence of the other alleged violations did not taint the district court's dispositional decision. We find no abuse of discretion in the decision of the district court to revoke Foster's probation and impose the prison sentence on the sole ground of his failure to pay restitution. Affirmed.

---

4. Foster did not present any evidence at the hearing establishing an inability to pay restitution. *See Ramsdell v. State*, 2006 WY 159, ¶ 21, 149 P.3d 459, 464 (Wyo.2006) (once the State demonstrates a failure to pay restitution, the burden shifts to the probationer to establish an inability to pay).