2017 WY 133

**Donald Alan CROUSE, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

S-17-0002

Supreme Court of Wyoming.

November 15, 2017

Representing Appellant: Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel.

Representing Appellee: Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; James M. Causey, Senior Assistant Attorney General; Christyne M. Martens, Senior Assistant Attorney General.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

BURKE, Chief Justice.

[¶1] Appellant, Donald Crouse, challenges an order of the district court revoking his probation and reinstating the original prison sentence. He claims the State failed to prove that the alleged violation was willful. He further claims that the district court, in reaching its decision, improperly relied upon allegations of other probation violations that were not charged or proven. We affirm.

## ISSUES

[¶2] Appellant presents two issues, which we reword for clarification:

1. Did the district court abuse its discretion in revoking Appellant's probation and reinstating the original prison sentence?

2. Did the district court err by relying on improper information to reach its decision?

## FACTS

[¶3] Pursuant to a plea agreement, Appellant entered a no contest plea to one count of kidnapping.[1] He was sentenced to three to six years of imprisonment, but that was suspended in favor of three years of probation. As a condition of his probation, Appellant was required to "submit himself to a full psychiatric evaluation with continued monitoring for an[y] prescribed medications as

---

1. The affidavit in support of the Information filed against Appellant asserted that five-year-old J.S. and his younger brother were riding their bicycles in their neighborhood, and rode past Appellant's home. Appellant came out of his house, picked J.S. up, and carried him into the house. The younger brother went home and told his father what had happened. The father went to Appellant's house, found the door open, went inside and removed his son. When police asked J.S. if Appellant had hurt him or touched him, J.S. said that Appellant had grabbed him by the arm at one point.

recommended in the [pre-sentence investigation report] ... [and] take medications as prescribed." Another condition prohibited Appellant from having any contact with the kidnapping victim, his brother, or his parents, who lived in the same neighborhood as Appellant. Appellant was also ordered to "abide by other conditions set forth by his supervising Probation Agent." Appellant was released on probation on May 12, 2016.

[¶4] As detailed below, on more than one occasion, Appellant's probation officer discussed with Appellant the probation condition of completing a psychiatric evaluation. Appellant made an appointment at a mental health clinic, and went to the clinic on the scheduled date. However, he left the clinic without completing the evaluation or making another appointment. On July 1, 2016, the State filed a petition to revoke his probation, asserting that Appellant had violated a probation condition by failing to obtain the required psychiatric evaluation. At the initial hearing on the revocation petition, Appellant was advised of his rights, and informed of the allegations contained in the petition. Appellant denied the allegations. The district court then addressed the issue of bond.

[¶5] The prosecutor recommended a relatively high bond. In making that recommendation, the prosecutor noted that Appellant lived "three doors" away from the victim's home and, on the day before being arrested for the alleged probation violation, had been observed "on the [victim's] property, looking into a trailer that was attached to a truck, looking around the truck, and standing and looking at the [victim's] home." The prosecutor specified that the State was not alleging those actions were a probation violation, because Appellant had not actually contacted the victim or his family. However, based on Appellant's alleged failure to obtain a psychiatric evaluation as ordered, and on his "proximity to the victim," the State recommended a $60,000 bond. Defense counsel urged the court to release Appellant on his own recognizance. He acknowledged that Appellant was "not terribly diligent" about completing his psychiatric evaluation, but claimed that there was no "knowing, intentional violation of probation." The district court considered the arguments, and emphasized the importance of Appellant obtaining a psychiatric evaluation. It ruled that, "for the safety [of] the community as well as [Appellant's] safety," bond would be set at $60,000.

[¶6] The revocation hearing was held on September 19, 2016. During the hearing, Appellant's probation officer testified that he met with Appellant on May 19, 2016, shortly after his sentencing. The officer recalled discussing the conditions of Appellant's probation and, specifically, the condition requiring Appellant to obtain a psychiatric evaluation. The officer testified that Appellant indicated he understood the condition. He met with Appellant again on May 31, 2016, and reminded him of the need to complete a psychiatric evaluation. The officer specified that Appellant needed to set up an appointment, and call the officer the following day to confirm that he had done so. Appellant did not make that call. However, when the probation officer met with Appellant on June 24, 2016, Appellant informed the officer that he had made a June 27, 2016, appointment for a psychiatric evaluation at High Country Behavioral Health. The probation officer testified that he later learned Appellant went to the clinic on the scheduled day, but left without completing the evaluation. Appellant told the officer that he "just kind of started zoning out when he was in the meeting and then eventually he just got up and left." He testified that, to his knowledge, Appellant had not obtained the required psychiatric evaluation.

[¶7] A clinical therapist at High Country Behavioral Health also testified. She stated that Appellant reported to the clinic on the scheduled day. He was given an intake packet, consisting of approximately forty pages. A short time later, she noticed that Appellant "had the paperwork spread out across, probably, four or five chairs, [and] had two or three toothbrushes out on the chairs also." When she invited Appellant into her office, he gathered the paperwork and put the toothbrushes into his pocket. In her office, she asked why he was there. He replied, "It's somebody's sick idea of a joke." When she asked him a question about the paperwork, he "put his head to one side, closed his eyes, kind of periodically closed and opened them."

This went on for about ten minutes until Appellant lifted his head and told her he was "not going to do this and walked out of the office." She further testified that Appellant had not completed a psychiatric evaluation at High Country Behavioral Health. Appellant did not testify at the hearing. He did not call any witnesses on his behalf.

[¶8] The district court found that the State had proven by a preponderance of the evidence that Appellant had violated a condition of his probation by failing to obtain a psychiatric evaluation. The district court then proceeded to consider an appropriate sanction for the violation. The prosecutor urged the district court to revoke Appellant's probation and reinstate the sentence of three to six years imprisonment. Defense counsel contended that Appellant was now prepared to complete his psychiatric evaluation, and intended to do so. On that basis, he requested that the district court place Appellant on probation once again. The district court decided to revoke Appellant's probation and to reimpose the original prison sentence. Appellant challenges that decision in this appeal.

### STANDARD OF REVIEW

[¶9] "A district court's decision to revoke probation and impose a sentence is discretionary, and we will not interfere with the ruling unless the record shows a clear abuse of discretion." *Miller v. State*, 2015 WY 72, ¶ 10, 350 P.3d 742, 745 (Wyo. 2015) (citing *Mapp v. State*, 929 P.2d 1222, 1225 (Wyo. 1996)). We apply that standard of review with considerable deference:

> Because the trial court heard and weighed the evidence, assessed witness credibility, and made the necessary inferences and deductions from the evidence, the trial court's factual findings are not disturbed on appeal unless they are clearly erroneous, and the evidence is viewed in the light most favorable to the trial court's' determination.

*Miller*, ¶ 11, 350 P.3d at 746. *See also Robinson v. State*, 2016 WY 90, ¶ 44, 378 P.3d 599, 610 (Wyo. 2016) ("[A]ll that is necessary to uphold a district court's decision to revoke probation is evidence that it made a conscientious judgment, after hearing the facts, that

the defendant willfully violated a condition of his probation.").

### DISCUSSION

[¶10] A helpful first step in evaluating Appellant's first issue is to review some aspects of the probation revocation process. Probation revocation is governed by W.R.Cr.P. 39. The process involves two steps. In the first part, the adjudicatory phase, the question is whether the probationer violated a condition of his probation. *Mapp*, 929 P.2d at 1226. If a violation is found, then the district court proceeds to the second part, the dispositional phase, in which the court must "determine the appropriate consequences of the probationer's violation." *Id.* In making that determination, "the district court must deliberate not only upon the violation, but also the reasons the conditions were originally imposed and the circumstances surrounding the violation." *Id.* The question of whether the probation violation was willful is addressed in the second part, the dispositional phase. *Sinning v. State*, 2007 WY 193, ¶ 10, 172 P.3d 388, 390 (Wyo. 2007).

[¶11] Appellant's arguments in this appeal are sometimes confusing because they fail to recognize the distinction between the two phases of the probation revocation process. However, it is undisputed that Appellant did not complete his psychiatric evaluation. This supports the district court's ruling in the adjudicatory phase that Appellant had violated a condition of his probation.

[¶12] Relying on *Forbes v. State*, 2009 WY 146, ¶ 8, 220 P.3d 510, 513 (Wyo. 2009), Appellant correctly points out that, ordinarily, a probation violation justifies revocation only if the violation was willful. Willfully means "intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." *Edrington v. State*, 2008 WY 70, ¶ 9, 185 P.3d 1264, 1267 (Wyo. 2008). He contends that his mental illness was "not meaningfully considered" by the district court when it was determining if his violation was willful. He

claims that the district court should have taken into account his mental illness "and the complications it imposed on his ability to comply" with the requirement of completing a psychiatric evaluation.

[¶13] As we have recognized, "it is possible that a defendant's mental illness could render his violation of the terms of his probation not willful." *Sharp v. State*, 2008 WY 142, ¶ 11, 196 P.3d 802, 804 (Wyo. 2008). That is not true in every case, however. In *Sharp*, even though the "record contain[ed] several psychological and psychiatric examinations" of the defendant, we concluded that there was sufficient evidence to support the district court's ruling that he had willfully violated the terms of his probation. *Id.*, ¶¶ 3, 9, 196 P.3d at 803-04. Similarly, in this case, the record establishes that the district court was aware of Appellant's mental illness. It was addressed at length in the presentence investigation report, and the district court discussed it in detail during the sentencing hearing. Appellant "had been in the state hospital for mental health issues several times, and once for as long as ten years." He likely suffers from schizophrenia, "which is characterized as involving disturbed or unusual thinking and strong or inappropriate emotions." The district court noted that Appellant's mental illness was the reason it imposed a probation condition requiring him to complete a psychiatric evaluation and continue taking his medications. During the probation revocation hearing, the district court observed that Appellant had "moments of great lucidity and . . . moments of, I guess, significant concern." The record contradicts Appellant's assertion that the district court inadequately considered his mental illness when it revoked his probation.

[¶14] We also conclude that the State's evidence was sufficient to establish that the violation was willful. We view this evidence in the light most favorable to the trial court's determination. *Miller*, ¶ 11, 350 P.3d at 745-46. The evidence establishes that Appellant was aware of the condition requiring him to obtain a psychiatric evaluation. The district court emphasized this condition at the sentencing hearing, and his probation officer discussed it with him several times. Appellant's scheduling of the appointment with High Country Behavioral Health further establishes that he knew about this condition of probation. The evidence indicates that he voluntarily chose to leave High Country Behavioral Health without obtaining the required evaluation or scheduling another appointment.

[¶15] During the revocation hearing, defense counsel suggested that Appellant "may need more assistance" in obtaining the required psychiatric evaluation. He did not claim that Appellant's mental illness rendered him incapable of complying with the probation condition. The evidence was sufficient to support a determination that the probation violation was willful.

[¶16] In his second issue, Appellant contends that it was improper for the district court to consider information indicating that he had been seen on the property of the victim's family. This assertion was made by the prosecutor, and Appellant objects that it was both hearsay and unsupported by evidence. When the information is placed in context, however, the district court did not err by considering it.

[¶17] The information was first brought to the district court's attention at the initial hearing, when the district court was deciding whether to release Appellant on his own recognizance or set a bond. The prosecutor indicated that Appellant had been seen on the property of the victim's family:

> I would bring to the Court's attention, and it has been produced already to [the defense counsel], that on July 6, 2016, that [Appellant] was, in fact, observed on the[ir] property, looking into a trailer that was attached to a truck, looking around the truck, and standing and looking at the [victim's] home after he had approached the home from his residence. This is not an issue that's raised as a probation revocation [issue] because while there is a condition of no contact with [the victim and his family], the—it is our assertion that he didn't actually knock on the door and communicate with them. But the Court certainly can understand why that would make the [victim's family] uncomfortable

that that had occurred less than a month after his release from incarceration.

The State explicitly indicated that it was not alleging a violation of the no-contact condition of Appellant's probation. Instead, the prosecutor offered the information because she believed it had a bearing on the district court's decision on setting bond for Appellant's release from jail pending the revocation hearing. Appellant has provided us with no authority suggesting it is improper for a district court to consider the State's concerns about the safety of the victim and his family when deciding whether to set bond for a defendant.

[¶18] The prosecutor's second mention of this concern occurred during the dispositional phase of the revocation hearing, at a point after the district court had already found that Appellant had violated a condition of his probation, and was deciding what consequences to impose because of that violation. The prosecutor stated:

> [Appellant] was observed looking into the[ir] camper and truck on their property and loitering around the surrounding area of the property; not, *per se*, violating the [no-]contact provisions of his probation but, nonetheless, making the parents of these small children very concerned for the safety of those children.

Appellant contends that this information was inadmissible hearsay. However, rules of evidence do not apply during the dispositional phase. W.R.Cr.P. 39(a)(5)(B); *Mapp*, 929 P.2d at 1226 ("In the dispositional phase, only general due process protections continue to attach and the rules of evidence are suspended."). Moreover, Appellant has not cited any authority indicating that it was improper for the district court to consider this information during the dispositional phase. To the contrary, he concedes in his brief that the prosecutor's comments "may have been acceptable" during the dispositional phase.

[¶19] Appellant also asserts the district court erred in considering, during the revocation hearing, whether Appellant was taking his medication. This stems from the district court's comment, during the dispositional phase, that

[Appellant], your case is a difficult case for many reasons; but the one that is probably the largest reason is that I recollect and I refreshed my recollection when I read [the pre-sentence investigation report], earlier today, that my comment about the safety of the community, which is one of the things I need to take into consideration for sentencing, was that I could be reasonably comfortable with the safety of the community, as well as your safety, if you were taking your medications and if you would have had an updated evaluation and everything was properly in place with that. The Court clearly has found that you've been at risk because of the failure to get that done. I haven't had any testimony on whether or not you've taken your medication. That's not at issue here. But the Court particularly finds that one of the reasons that I granted you probation was the very strict and the very absolute requirement that you get an evaluation, you follow through with it, and you do it. You've not done that. . . . And the only place that the Court can be certain that you'll do that, [Appellant], is actually if you're in someone's custody and they're monitoring [you].

Appellant contends it was never alleged that he violated a probation condition by failing to take his medications, that there was no evidence presented that would allow the district court to determine whether he was taking his medications and, accordingly, that the district court "erred in relying on this unverified assumption."

[¶20] Appellant's argument ignores what the district court actually said and did. The district court acknowledged that it had heard no evidence about whether he was taking his medication. It acknowledged that taking his medication was not at issue. It did not find that Appellant had violated his probation conditions by failing to take his medication. It found only that Appellant violated a probation condition by failing to obtain a psychiatric evaluation. The district court did not rely on an unverified assumption, it merely observed that one way to ensure Appellant would complete a psychiatric evaluation and continue taking his medication was to incarcerate him. We have previously said that, in the dispositional phase, a court "must delib-

erate not only upon the violation, but also the reasons the conditions were originally imposed and the circumstances surrounding the violation." *Mapp*, 929 P.2d at 1226. The district court did so, and Appellant has failed to demonstrate that it abused its discretion by considering the safety of the community and Appellant when deciding whether to revoke his probation and incarcerate him.

[¶21] Affirmed.