2007 WY 193

**Larry Dean SINNING, Jr., Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–07–0081.**

Supreme Court of Wyoming.

Dec. 11, 2007.

Representing Appellant: Diane M. Lozano, Public Defender, PDP; Tina N. Kerin, Appellate Counsel; Donna D. Domonkos, Senior Assistant Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]   Larry Dean Sinning, Jr., pled guilty to one count of forgery and one count of conspiracy to commit forgery.  The district court sentenced him to a period of incarceration in the Wyoming State Penitentiary but recommended him for the boot camp program at the Wyoming Honor Conservation Camp. Later, the district court modified Mr. Sinning's sentence so that, upon successful completion of boot camp, his original sentence would be suspended and he would be placed on probation.  One of the conditions of probation was that he be accepted into and complete an Adult Community Corrections (ACC) program.

[¶ 2]   Mr. Sinning did not complete the program as required and, after a hearing, the district court entered an order revoking his probation and reinstating the original sentence.  He appeals the probation revocation order, claiming that the State did not produce any evidence showing why he was terminated from the ACC program.  Absent evidence of the reason, he argues, the State failed to show he willfully violated the conditions of probation.

[¶ 3]   We affirm the revocation.

### ISSUE

[¶ 4]   The issue for our determination is whether the district court abused its discretion by revoking Mr. Sinning's probation.

### FACTS

[¶ 5]   In September of 2004, Mr. Sinning was charged with two counts of forgery in violation of Wyo. Stat. Ann. § 6–3–602(a)(ii)(b) (LexisNexis 2005) and one count of conspiracy to commit forgery in violation of Wyo. Stat. Ann. §§ 6–1–303(a) and 6–3–602(a)(ii)(b) (LexisNexis 2005).  On January 13, 2005, Mr. Sinning pled guilty to conspiracy to commit forgery and one count of forgery.  The district court sentenced him to concurrent terms of 30 to 60 months in prison, but recommended him for boot camp.  After Mr. Sinning completed boot camp, the district court modified his sentence by suspending the balance of his prison term and placing him on probation on the condition that he attend and complete an ACC program.  In accordance with the district court's order, Mr. Sinning was placed at Community Alternatives of Casper (CAC) in March of 2006.

[¶ 6]   On October 16, 2006, the State filed a petition to revoke Mr. Sinning's probation.  The State alleged that Mr. Sinning had been terminated from CAC in violation of the conditions of his probation.  CAC disciplinary hearing documents contained in the record indicate that he was terminated because, as part of an alleged plan to rob an Arby's restaurant, he set off a fire alarm at CAC.

[¶ 7]   In response to the State's petition, the district court convened two separate hearings, the first to adjudicate whether or not Mr. Sinning was required to complete the CAC program as a term of probation and failed to fulfill that requirement, and the second to determine whether his violation of the probation condition should result in revocation.  After the adjudicatory hearing, the district court concluded Mr. Sinning did not complete the CAC program as ordered.  Following the dispositional hearing, the district court concluded Mr. Sinning's probation should be revoked.  Therefore, the district court entered an order revoking probation and re-imposing the original concurrent sentences.

### STANDARD OF REVIEW

[¶ 8]   A district court's decision to revoke probation and impose a sentence is discretionary and will not be disturbed unless the record shows a clear abuse of discretion.

*Mapp v. State,* 929 P.2d 1222, 1225 (Wyo. 1996). A district court has broad discretion in sentencing matters, including decisions to grant or revoke probation. *Trujillo v. State,* 2002 WY 56, ¶ 12, 44 P.3d 943, 947 (Wyo. 2002). We review the district court's decision to determine whether or not the court could reasonably conclude as it did. *Mapp,* 929 P.2d at 1225. All that is necessary to uphold a district court's decision to revoke probation is evidence that it made a conscientious judgment, after hearing the facts, that a condition of probation was violated. *Id.* However, the district court's decision must be based upon verified facts and the defendant must be afforded due process. *Anderson v. State,* 2002 WY 46, ¶ 25, 43 P.3d 108, 118 (Wyo.2002).

## DISCUSSION

[¶ 9] Probation revocation proceedings are governed by W.R.Cr.P. 39. In addressing such proceedings under the rule, we have said:

> The proceedings for probation revocation consist of a two-part process. The first part, the adjudicatory phase, requires the district court to determine by a preponderance of the evidence whether a condition of probation was violated. The second, dispositional phase, is triggered only upon a finding that a condition of probation was violated. In this phase, the district court must deliberate not only upon the violation, but also the reasons the conditions were originally imposed and the circumstances surrounding the violation. After consideration of all these factors, the district court must then determine the appropriate consequences of the probationer's violation.
>
> In the adjudicatory phase, the Fourteenth Amendment right to due process and the Wyoming Rules of Evidence apply. In the dispositional phase, only general due process protections continue to attach and the rules of evidence are suspended.

*Mapp,* 929 P.2d at 1226 (citations omitted).

[¶ 10] In applying Rule 39, we have said that notice to a probationer of the grounds for revocation is fundamental and failure to provide such notice is a defect affecting a substantial right. *Anderson,* ¶ 26, 43 P.3d at 118. In addition to the requirements contained in Rule 39, we have said that in order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must either be willful or threaten the safety of society. *Id.* Willfulness is determined at the dispositional phase of the proceedings. *Mapp,* 929 P.2d at 1228.

[¶ 11] In *Mapp,* we applied these standards under circumstances quite similar to those presented in the case at bar. Mr. Mapp, like Mr. Sinning, was placed on probation conditioned upon his completion of the CAC program. Before Mr. Mapp had completed the program, the State filed a petition to revoke his probation to which it attached an affidavit signed by his supervisor stating that Mr. Mapp was terminated from the program because he failed to take prescribed medication and was unmanageable without it.

[¶ 12] At the adjudicatory hearing, the supervisor testified that Mr. Mapp was terminated from CAC before having completed the program. Mr. Mapp testified that he was wrongfully terminated on the basis of untrue statements made by a CAC employee. The district court concluded that Mr. Mapp did not complete the CAC program and his probation should be revoked.

[¶ 13] On appeal, Mr. Mapp claimed the district court abused its discretion in revoking his probation because it relied solely on hearsay allegations contained in a CAC report about which the State's only witness testified he had no personal knowledge. The report was filed with the court but was not admitted into evidence during the direct examination of the State's only witness. Mr. Mapp argued there was a failure of proof because the State presented no evidence that he failed to take his medication and the only support for the State's claim was the hearsay report contained in the court file.

[¶ 14] On appeal, this Court held that the adjudicatory phase of the revocation proceeding ended once it was established that Mr. Mapp did not complete the CAC program. We said, "The reasons for Mr. Mapp's failure to complete the program were appropriately

considered in the second, dispositional phase, of the proceeding." *Id.* at 1227. Thus, the State was not required to present evidence in the adjudicatory phase of the proceedings showing that Mr. Mapp's failure to take required medication led to his termination from the program. Additionally, we said, "when the [district] court * * * turns its attention to the second stage of the revocation hearing, hearsay evidence will be useful in determining whether or not to revoke probation in light of the prior finding of a probation violation." *Id.*

[¶ 15] During the dispositional phase of the proceeding, Mr. Mapp had the opportunity to demonstrate that his termination from CAC was not his fault and his probation should not be revoked. The district court considered his testimony together with the information contained in the CAC report and concluded revocation was appropriate. The record indicated Mr. Mapp had notice of the factual allegations contained in the report and ample opportunity to procure the testimony of the witnesses named in the report but chose instead to rely on his own testimony to challenge the accuracy of the allegations in the report. On appeal, this Court found no denial of due process or abuse of discretion and upheld the revocation.

[¶ 16] We are presented with almost the same circumstances here. The State filed a petition for revocation together with an affidavit signed by Mr. Sinning's probation supervisor stating that he had violated the terms of his probation in that he had been terminated from CAC before completing the program. At the adjudicatory hearing, the State called the probation supervisor to testify that Mr. Sinning did not complete the CAC program. As in *Mapp,* her testimony ended the adjudicatory phase because it established that Mr. Sinning did not complete the program upon which his probation was conditioned.

[¶ 17] Accordingly, the district court issued an adjudication letter finding that Mr. Sinning did not complete an ACC program as ordered. The district court further stated in the letter that a disposition hearing would be scheduled at which time, in accordance with *Mapp,* Mr. Sinning would have an opportunity to demonstrate that his termination from CAC was not his fault and should not result in revocation. The district court subsequently entered an order on adjudication in accordance with his letter.

[¶ 18] After the order on adjudication was entered, the State filed with the district court the CAC termination report containing the details of Mr. Sinning's termination, as also occurred in *Mapp.* The report detailed problems Mr. Sinning had during his time at CAC, including having been fired from one job for frequently being late and not showing up at all on two occasions; having a questionable relationship with his manager while working at Arby's restaurant (the manager called in time extensions for Mr. Sinning when the manager was not at work and even after the manager was no longer employed by Arby's); and an arrest for driving with an expired license at a time when he was supposed to be at work. The problems culminated with reports to a CAC supervisor by two other residents that Mr. Sinning was planning to rob Arby's and, in order to carry out his plan, intended to pull a fire alarm at CAC, walk out with the other residents in response to the alarm and not return. According to the termination report, CAC personnel contacted law enforcement, and officers were at the facility on the evening the residents reported Mr. Sinning intended to carry out his plan. The fire alarm was pulled, and the officers arrested Mr. Sinning. The report stated that Mr. Sinning was terminated from the program "based on actions that lead CAC staff to believe [he] was trying to follow through with his threat to rob Arbys."

[¶ 19] Prior to the disposition hearing, the State also filed two letters with the district court, one from the deputy county attorney to defense counsel and the other from Mr. Sinning's probation agent to the deputy county attorney disclosing the names of the CAC residents who made the reports concerning Mr. Sinning's plan to rob Arby's and pull the fire alarm. These letters were in response to defense counsel's argument at the adjudicatory hearing that the termination report should not be considered because it contained untrustworthy hearsay from CAC

residents whom Mr. Sinning had no way of challenging because they were not identified. Defense counsel indicated that if the names were disclosed, the defense could proffer discovery and subpoena them as witnesses.

[¶ 20] At the disposition hearing, the State presented no evidence and Mr. Sinning testified on his own behalf. He denied any intention to rob Arby's and denied pulling the fire alarm. He also testified that the CAC resident who initiated the report against him had been very angry with him and they had not spoken for approximately two weeks before the fire alarm incident. His defense was, in essence, that the resident who made the report to CAC lied. Defense counsel informed the district court that the defense made a tactical decision to have Mr. Sinning refute the allegations rather than subpoenaing the resident to testify.

[¶ 21] Following the second hearing, the district court issued a disposition letter. The letter began by noting that the court had reviewed the file, the pre-sentence investigation report and the evidence presented in the revocation proceeding. The court further noted that the State had the burden of proving the violation alleged in the petition by a preponderance of the evidence. The court stated:

> Here, the court finds that the better weight of the testimony and evidence support the fact that defendant was terminated from the ACC program, that the reason for his termination was a good one, and that the reason for termination was within defendant's control.
>
> [Mr. Sinning] has offered his own testimony, in essence attempting to refute the basis for his expulsion from ACC. Based on the totality of the evidence the court finds [Mr. Sinning]'s testimony improbable. [Mr. Sinning] would have the court believe that, by virtue of some conspiracy, the staff in conjunction with other residents of the ACC, fabricated a rather elaborate and detailed scheme to have [Mr. Sinning] terminated from the program after some seven months.
>
> The court has also taken the time to review the ACC termination report filed with the court on December 4, 2006. Cer-

tainly, that report stands for the proposition that, apart from the main reasons for termination, [Mr. Sinning] did not have a trouble-free stay at the ACC. Rather, the report indicates several instances of deception by [Mr. Sinning], some of which he admitted.

The district court subsequently entered an order revoking Mr. Sinning's probation.

[¶ 22] In *Mapp*, we reiterated that the differing evidentiary requirements in the first and second phases of a probation revocation proceeding contemplate the admission of hearsay evidence to assist the court in the dispositional determination. Here, as in *Mapp*, the district court considered hearsay in the form of the CAC termination report and the pre-sentence investigation report. Here, as in *Mapp*, Mr. Sinning had notice of the factual allegations contained in the CAC report and the opportunity to procure the testimony of the witnesses named in the report prior to the disposition hearing. He chose to rely instead solely on his own testimony to challenge the allegations in the report. Mr. Sinning, therefore, was not denied due process by the district court's consideration of the report.

[¶ 23] In addition to the termination report, the district court also considered Mr. Sinning's testimony. Where non-hearsay is presented, we defer to the district court's opportunity to assess the credibility of the witnesses and make necessary inferences, deductions and conclusions. *Mapp*, 929 P.2d at 1227. As reflected in its disposition letter, the district court did not find Mr. Sinning's testimony credible, deduced that his story was improbable and inferred that he willfully pulled the fire alarm.

[¶ 24] The record presents abundant evidence that the district court made a conscientious judgment to revoke Mr. Sinning's probation. The testimony during the adjudicatory phase was uncontested—Mr. Sinning failed to successfully complete the CAC program. During the dispositional phase, Mr. Sinning's testimony did not persuade the district court that the information contained in the CAC termination report should be disregarded. As we have said:

A probation revocation hearing is not a trial on a new criminal charge. It is simply an extension of the sentencing procedure resulting from the conviction of the basic charge, coupled with the requirement that the probationer be afforded due process of law before being deprived of the conditional right to liberty granted by probation.

*Mapp*, 929 P.2d at 1226.

[¶ 25]   Mr. Sinning was afforded due process of law prior to the revocation. In considering whether to revoke his probation, the district court was entitled to look to the CAC report and other reports submitted to the court by authorized agencies for guidance. These reports together with Mr. Sinning's testimony support the district court's determination that his probation should be revoked and the original sentence reinstated.

[¶ 26]   Affirmed.