2008 WY 156

**Nicolas Christopher COUNTS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–08–0095.

Supreme Court of Wyoming.

Dec. 31, 2008.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General. Argument by Ms. Pojman.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1]   The appellant contends that his constitutional right to due process of law was violated when his probation was revoked without him having received adequate notice of the basis for that revocation, and without the district court having supervised his removal from a community corrections facility. Finding no error, we affirm.

## ISSUE

[¶ 2]   Was the appellant's right to due process of law violated by revocation of his probation without adequate notice to him of the basis for such revocation or by the district court's failure to supervise his removal from a community corrections facility?

## FACTS

[¶ 3]   The appellant pled guilty to unlawful delivery of a controlled substance and on January 9, 2007, was sentenced to incarceration for a period of not less than 30 months and not more than 60 months.  That sentence was suspended, however, and he was placed on supervised probation for a period of 36 months.  One of the conditions of probation was the following:

4.   That the Defendant shall enter and successfully complete the residential felony program at Community Alternatives of Casper (CAC). That the Defendant must apply to CAC within two (2) days.

[¶ 4] The appellant arrived at Community Alternatives of Casper (CAC) on February 25, 2007.  He obtained employment at several businesses, eventually beginning work at an Old Chicago restaurant on July 24, 2007. On October 24, 2007, the appellant was "written up" on a disciplinary form containing the following allegation:

On [October 23, 2007] Resident Nicolas Counts # 16973–B was signed out to work, however when this Employment Coordinator conducted an on-site check it was discovered that he was not actually there and that he had been clocked out of work since 1916.  Mr. Counts did not sign back into the Agency until 0018 on 10/24/2007, 5 hours unauthorized and unaccounted for by our staff at this facility, this is a direct

violation of MJ47—Failure to return to the community corrections facility on or before the time specified in the schedule of the release plan. This includes failure to telephone the ACC as directed by staff when changing locations and absences from designated sign out locations without prior approval from staff. This has become a pattern for Mr. Counts, he received a conduct order on 05/21/07 and several staffings addressing failure to follow Agency policies and procedures, specifically for being in places without staff authorization. He has also had 2 prior staff reports of being unauthorized on 04/28/07 and 05/28/07. Most recently, Mr. Counts has received a couple of formal Notice of Charges, one MJ46–Failure to telephone the community corrections facility upon changing location or failure to remain in the particular area designated in pass/furlough/leave on 08/19/07 and a similar MJ47 on 09/17/07.

[¶ 5] The appellant was arrested and jailed until a disciplinary hearing was held on October 26, 2007. He was served with a copy of the allegations along with an outline of his administrative rights. A summary of the hearing indicates that the appellant presented the following explanation for his alleged absence from the restaurant:

Offender informs he was denied for his pass and called in to his work to verify his schedule for the day. He claims to have permission form [sic] his manager to have dinner with his mother on the clock. The offender even charged his meal to be taken for his pay, then he "Hung Out[.]" See Record for further details.

The hearing officers found no mitigating factors, found two aggravating factors-prior similar acts and planned misconduct-and recommended termination from CAC. The notice terminating the appellant from CAC stated the following as the reason for termination:

Resident Counts, Nicolas, ID# 16973–B, was found guilty during formal disciplinary hearing Case # C0710–09–148, of unauthorized movement while in the community, with aggravating factors of a continued history of the same.

[¶ 6] On November 5, 2007, the State filed a Petition for Revocation and Request for Bench Warrant, to which was attached an Affidavit for Revocation of Probation and Request for Bench Warrant containing the following pertinent allegation:

1. That said Defendant, on October 26, 2007, was terminated from the felony program at Community Alternatives of Casper in violation of condition number four (4) of his Judgment and Sentence.

[¶ 7] The appellant was afforded an initial appearance in regard to the petition on November 7, 2007, at which time bond was set and counsel was appointed. A revocation hearing scheduled for November 15, 2007, was continued at the request of the appellant's counsel. Eventually, at a hearing on January 8, 2008, the appellant admitted that he had been terminated from the CAC program, but contended that he could not defend himself against the revocation petition because the allegations therein were insufficiently specific, and because the discovery documents that had been provided to him covered too much time and too much conduct to narrow down the accusation. Based upon the appellant's admissions, the district court adjudicated the issue of the violation, ordered the discovery documents be made a part of the court record, and granted the parties leave to seek additional discovery and to file briefs and motions prior to a dispositional hearing.

[¶ 8] A little over one week later, the appellant filed a demand that the State amend its petition to set forth the grounds upon which the appellant had been terminated from CAC and upon which the State would rely in seeking revocation of probation. The State responded with a memorandum of law, taking the position that the State was not required to prove anything beyond the appellant's termination from CAC.

[¶ 9] The dispositional hearing was held on February 22, 2008. The State relied generally upon the discovery documents that had been served upon the appellant, and specifically upon the termination report contained therein. The appellant argued that the State had not met the requirements of W.R.Cr.P. 39(a) that a petition for revocation of proba-

tion must set forth "the conditions of probation which are alleged to have been violated by the probationer and the facts establishing the violation." Further, the appellant argued that the State had failed to prove that the probation violation was willful.

[¶ 10] At the end of the hearing, the district court concluded that the appellant had violated probation by failing successfully to complete the CAC program. In reaching that conclusion, the district court relied not only upon the appellant's admission that he had been terminated from CAC, but also upon the CAC document that charged the Old Chicago incident, and upon the CAC documents showing the appellant's history at CAC. The court further concluded that the documents and hearing testimony proved that the probation violation was willful. The appellant's probation was revoked and the original sentence was re-imposed, with a recommendation for "Boot Camp." [1]

## STANDARD OF REVIEW

[¶ 11] A district court's decision whether to revoke probation, like other sentencing decisions, is discretionary, and generally is reviewed for an abuse of discretion. *Sinning v. State*, 2007 WY 193, ¶ 8, 172 P.3d 388, 389–90 (Wyo.2007). Probation revocation proceedings are, however, also subject to constitutional due process analysis, with any constitutional claims reviewed *de novo*. *Meyers v. State*, 2005 WY 163, ¶ 8, 124 P.3d 710, 714 (Wyo.2005); *Shaw v. State*, 998 P.2d 965, 967 (Wyo.2000).

## DISCUSSION

[¶ 12] This discussion must take place in the context of the law that governs probation revocation, which law we recently set forth in *Sinning*, 2007 WY 193, ¶¶ 9–10, 172 P.3d at 390 (internal citations omitted):

The proceedings for probation revocation consist of a two-part process. The first part, the adjudicatory phase, requires the district court to determine by a preponderance of the evidence whether a condition of probation was violated.

The second, dispositional phase, is triggered only upon a finding that a condition of probation was violated. In this phase, the district court must deliberate not only upon the violation, but also the reasons the conditions were originally imposed and the circumstances surrounding the violation. After consideration of all these factors, the district court must then determine the appropriate consequences of the probationer's violation.

In the adjudicatory phase, the Fourteenth Amendment right to due process and the Wyoming Rules of Evidence apply. In the dispositional phase, only general due process protections continue to attach and the rules of evidence are suspended.

In applying Rule 39, we have said that notice to a probationer of the grounds for revocation is fundamental and failure to provide such notice is a defect affecting a substantial right. In addition to the requirements contained in Rule 39, we have said that in order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must either be willful or threaten the safety of society. Willfulness is determined at the dispositional phase of the proceedings.

[¶ 13] In specific regard to notice:

Due process requires that a defendant be given written notice of the claimed violations of probation. *Shaw v. State*, 998 P.2d 965, 967 (Wyo.2000). In probation revocation proceedings, notice pertains to the .charges regarding a violation of the conditions of probation, not to matters discussed during a dispositional phase. W.R.Cr.P. 39(a)(4); *Gailey v. State*, 882 P.2d 888, 892 (Wyo.1994).

*Sweets v. State*, 2003 WY 64, ¶ 11, 69 P.3d 404, 406 (Wyo.2003). The conduct alleged as grounds for a revocation need not be alleged with the same specificity as required in a complaint, indictment, or information. *Mur-*

---

1. The term "Boot Camp" is frequently used to identify Wyoming's statutory Youthful Offender Program, found at Wyo. Stat. Ann. § 7–13–1001 through 7–13–1003 (LexisNexis 2007).

*phy v. State*, 592 P.2d 1159, 1162 (Wyo.1979). Furthermore:

> A probation revocation hearing is not a trial on a new criminal charge. It is simply an extension of the sentencing procedure resulting from the conviction of the basic charge, coupled with the requirement that the probationer be afforded due process of law before being deprived of the conditional right to liberty granted by probation.

*Sinning*, 2007 WY 193, ¶ 24, 172 P.3d at 393.

■ [¶ 14] The facts of this case, in the context of the law just recited, leave the appellant with no due process argument. At the adjudicatory hearing on January 8, 2008, the appellant admitted that he had violated the terms of his probation:

> THE COURT: And then in the affidavit for revocation of probation of [the] Probation and Parole agent with the Wyoming Department of Corrections, there's a single allegation of violation of your probation. And that reads that said defendant on October 26th, 2007, was terminated from the Felony Program at Community Alternatives of Casper, in violation of condition number 4 of his Judgment and Sentence.
>
> Do you admit to that violation of probation?
>
> THE DEFENDANT: Yes, Your Honor.

[¶ 15] The appellant was represented by counsel at the adjudicatory hearing, and counsel's statement just preceding this admission made it clear that the appellant was admitting the violation without conceding the question of revocation:

> [DEFENSE COUNSEL]: We will admit to the violation in that a condition of his probation has been violated, not that probation should be revoked.

The appellant's admission conclusively proved the violation, leaving only the question of disposition—whether or not probation should be revoked—for further hearing.

The admission effectively waived any due process rights the appellant may have had based on an alleged lack of notice.[2] *Sweets*, 2003 WY 64, ¶¶ 10–13, 69 P.3d at 406.

[¶ 16] We have made it clear that probation may not be revoked for a violation that has not been shown to be willful, and that willfulness is considered during the dispositional phase, rather than the adjudicatory phase, of the revocation proceedings. *Edrington v. State*, 2008 WY 70, ¶ 7, 185 P.3d 1264, 1266–67 (Wyo.2008). To the extent that the appellant raises the purported lack of an allegation of willfulness as part of his argument that notice was lacking, we conclude that he conceded that allegation by admitting that he had violated a condition of probation. To the extent, however, that his allegation of a lack of proof of willfulness goes to the dispositional phase, we will note that, after reviewing the CAC documentation and after hearing the witnesses' testimony, the district court found that the violation was willful. Specifically, the court found "noncompliance with very clear rules and requirements of the ACC rules and regulations." We cannot say that this finding was clearly erroneous. *See Edrington*, 2008 WY 70, ¶ 9, 185 P.3d at 1267. The district court was entitled to assess the credibility of the witnesses, to consider the administrative proceedings that led to the appellant's termination from CAC, and to consider the appellant's history at the CAC, especially that part of the CAC documentation that showed the appellant's disregard for and violation of the very rule that formed the basis for the termination.

■ [¶ 17] The second prong of the appellant's appellate argument is that the district court did not "supervise" his termination from CAC. As best as we can understand this argument, it is based upon Wyo. Stat. Ann. § 7–18–113 (LexisNexis 2007), which reads as follows:

**§ 7–18–113. Confinement of violators.**

---

2. We feel compelled to note that, even if the appellant had preserved his notice argument, we would find it factually to be just short of frivolous. As noted herein, he was arrested immediately after the Old Chicago incident, he was served with a copy of the disciplinary write-up describing the Old Chicago incident, he was afforded an administrative hearing, the focus of which was the Old Chicago incident, and he presented a defense to the allegations of the Old Chicago incident.

If the administrator of an adult community correctional facility or any other appropriate supervising authority has cause to believe that an offender, parolee or inmate placed in an adult community correctional facility has violated any rule or condition of that person's placement in that facility or any term of post-release supervision or cannot be safely housed in that facility, the administrator or other authority shall certify to the department the facts which are the basis for the belief and execute a transfer order to the sheriff of the county in which the facility is located, who shall confine the offender, parolee or inmate in the county jail *pending a determination by the appropriate judicial or executive authorities as to whether or not the offender, parolee or inmate shall remain in community corrections.*

(Emphasis added.) The gist of the appellant's argument is that the highlighted language restricts the determination of whether an offender should be terminated from a community correctional facility to the judge who sent him or her there, or in the case of a parolee or inmate, to the parole board or department of corrections.

[¶ 18] We do not agree with this interpretation of Wyo. Stat. Ann. § 7–18–113. Although the title of the statute is not part of the statute, it does suggest that the purpose of the statute is to give the administrators of an adult community correctional facility the authority to have offenders, parolees, and inmates confined in jail pending disposition of alleged violations. *See* Wyo. Stat. Ann. § 8–1–105(c) (LexisNexis 2007). When the entirety of the Adult Community Corrections Act is read in *pari materia,* it is clear that offenders, parolees, and inmates may be removed from a particular community correctional facility by action of the administrators of that facility: Wyo. Stat. Ann § 7–18–103(c) (LexisNexis 2007) (unit of local government has authority to reject after acceptance any offender, parolee, or inmate); Wyo. Stat. Ann. § 7–18–104(c) (LexisNexis 2007) (non-governmental entity operating an

adult community correctional facility has authority to reject after acceptance any offender, parolee, or inmate); Wyo. Stat. Ann. § 7–18–106(a)(iii) (LexisNexis 2007) (community corrections board may reject after acceptance any offender, parolee, or inmate); Wyo. Stat. Ann. § 7–18–108(b)(iii) (LexisNexis 2007) (court may place offender in an adult community correctional facility only if the offender is acceptable to the community corrections board); Wyo. Stat. Ann. § 7–18–109(b)(v) (LexisNexis 2007) (inmate may be transferred to an adult community correctional facility only if the inmate has been accepted by the community corrections board); Wyo. Stat. Ann. § 7–18–115(b)(iii) (LexisNexis 2007) (parolee may be required to participate in an adult community correctional facility or program only if the parolee has been accepted by the community corrections board).

[¶ 19] Viewing this statutory scheme in its totality, it seems clear that the highlighted language of Wyo. Stat. Ann. § 7–18–113 simply reflects the common-sense rule that, in instances such as the current case, it is the sentencing court that determines whether probation should be revoked and, if so, whether the offender should be incarcerated or should be returned to probationary status and allowed to participate in a community correctional program.[3] In fact, we see nothing in the Adult Community Corrections Act that suggests legislative intent that the judiciary have any supervisory authority over individual adult community correctional facilities.

## CONCLUSION

[¶ 20] Under the Adult Community Corrections Act, offenders, parolees, and inmates may be terminated from a community correctional facility by administrative action of the governing entity. The appellant was afforded an administrative hearing before he was terminated from the CAC, with prior notice and an opportunity to be heard. He was also offered both an adjudicatory hearing and a

---

**3.** Reference to "executive authorities" suggests the same common-sense rule that the parole board or the department of corrections would

exercise such authority for parolees and inmates, respectively.

dispositional hearing in the district court before his probation was revoked, during which judicial process he was represented by appointed counsel. His only complaint with the discovery documents provided to him by the State was that there was "too much," not that there was "too little." At the adjudicatory hearing, he admitted that he had violated a term of his probation, and the district court's finding that the violation was willful was not clearly erroneous.

[¶ 21] We affirm.