# IN THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 34

OCTOBER TERM, A.D. 2025

March 12, 2026

ROBERT JAMES BUSTOS,

Appellant
(Defendant),

v.

S-25-0181

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellant:*
Office of the State Public Defender: Brandon T. Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel.

*Representing Appellee:*
Keith G. Kautz, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Leanne J. Johnston, Assistant Attorney General.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Robert James Bustos appeals the district court's order revoking his probation and imposing the underlying prison sentence.  We affirm.

### ISSUE

[¶2]    Mr. Bustos raises one issue, which we restate:

> Was Mr. Bustos' Fourteenth Amendment right to due process violated during the dispositional phase of his probation revocation hearing when the State relied on several violations of the conditions of his probation for which he did not have notice because they were not alleged in the petition to revoke probation?

### FACTS

[¶3]    In July 2024, Mr. Bustos pled guilty to delivery of a controlled substance, methamphetamine, second or subsequent offense, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(i).  Several months later, in October 2024, the district court sentenced him to six to ten years in prison but suspended the sentence in favor of three years of supervised probation.  The court imposed several conditions of probation, including that Mr. Bustos (1) "obey the rules and regulations of the Department of Corrections, Division of Field Services, or any similar agency to which his probation might be transferred" (Condition 3) and (2) "obtain any evaluations/programming/treatment required by his Probation Agent, completing any required treatments" (Condition 9).  The court orally advised Mr. Bustos of these conditions at the sentencing hearing and listed them in its written sentencing order.

[¶4]    Seven months later, on May 21, 2025, the State filed a petition to revoke Mr. Bustos' probation, claiming he violated Conditions 3 and 9 of his probation "as evidenced by the attached affidavit of Agent Ashley Lieberenz," Mr. Bustos' probation officer.  In the affidavit, Agent Lieberenz alleged that on May 14, 2025, Mr. Bustos "left Level 3.5 Treatment at Southwest Counseling Service's Therapeutic Community Program [(Southwest Counseling)] against staff advice."  The State also requested the district court issue a warrant for Mr. Bustos' arrest because he "left treatment through a window and his current whereabouts [were] unknown."  The district court issued an arrest warrant, and Mr. Bustos was arrested.  The district court appointed counsel to represent Mr. Bustos and scheduled a probation revocation hearing.

[¶5]    At the beginning of the probation revocation hearing, defense counsel informed the district court that Mr. Bustos intended to admit to violating his probation.  Mr. Bustos did, in fact, initially admit to violating his probation but, upon further questioning, claimed

1

Agent Lieberenz did not require him to complete inpatient treatment at Southwest Counseling but rather his attendance was voluntary. The district court concluded this statement did not constitute an admission to the violation and proceeded immediately to an evidentiary hearing.

[¶6]    The State called Agent Lieberenz, who testified she became Mr. Bustos' probation officer on February 19, 2025. When asked if she had reviewed the district court's written sentencing order with Mr. Bustos, Agent Lieberenz stated she did not have the opportunity to do so because he either failed to show up for scheduled office visits or was late for these visits. She also explained it would have been inappropriate for her to review the sentencing order with him when "he was presumptive positive for substances" at "almost every" office visit he did attend. The State then asked her to explain why Mr. Bustos was ordered to complete a Level 3.5 inpatient substance abuse treatment program. Agent Lieberenz stated Mr. Bustos' original Addiction Severity Index (ASI) evaluation resulted in a recommendation that he participate in a Level 1 outpatient treatment program. Due to the passage of time since that evaluation and Mr. Bustos' continued drug use, a new evaluation was required. The new evaluation led to a recommendation that he attend a Level 3.5 inpatient treatment program. Agent Lieberenz said she informed Mr. Bustos of the recommendation on April 14, 2025, told him he was required to comply with it, and directed him to complete an application for inpatient treatment.

[¶7]    Agent Lieberenz testified she met with Mr. Bustos in her office on April 24, 2025. During that meeting, Mr. Bustos tested presumptive positive for methamphetamine. He admitted to "snorting meth in his father's garage" the previous day. Agent Lieberenz informed him he would be jailed for three days and then sent to Southwest Counseling for inpatient drug treatment. While Agent Lieberenz was preparing the necessary paperwork for his detention, another agent allowed Mr. Bustos to go outside to make a telephone call. While outside, Mr. Bustos ran from the probation office. He was eventually arrested and received new criminal charges for this conduct. Mr. Bustos was released on bond and began inpatient treatment at Southwest Counseling on May 5, 2025.

[¶8]    Agent Lieberenz testified that on May 13, she received an email from Southwest Counseling stating Mr. Bustos had requested to leave treatment early because his grandfather was ill. She arranged to speak with Mr. Bustos the following morning. She never spoke with Mr. Bustos because he left Southwest Counseling by climbing out of a window. In a discharge letter to Agent Lieberenz, Southwest Counseling stated Mr. Bustos "saw little relevance in treatment to changing his criminal lifestyle," "refused to accept responsibility," and "would become aggressive." Agent Lieberenz testified this behavior was consistent with his attitude and conduct while on probation, as evidenced by his failure to show up for office visits and his continued drug use.

[¶9]    The district court found the State met its burden of showing by a preponderance of the evidence that Mr. Bustos violated a condition of his probation and revoked his

probation. The court then proceeded immediately to disposition. The State requested reinstatement of the underlying prison sentence due to Mr. Bustos' "willful violations of probation," including his continued use of methamphetamine, his coming "into the [probation] office a day after snorting methamphetamine and then [running] from the probation office after being told of an arrest and hold," his receipt of new criminal charges, and his escape from Southwest Counseling through a window. It also noted Mr. Bustos "saw little relevance" in treatment and probation and his underlying drug delivery offense was his second offense. It further observed that the reason Mr. Bustos was placed on probation was to allow him to obtain treatment and he did not participate in that treatment. Mr. Bustos asked the court to reinstate probation because he had plans to move closer to family, had a job secured, and wanted to complete substance abuse treatment.

[¶10] The district court found Agent Lieberenz required Mr. Bustos to attend inpatient treatment and he did not complete it. It determined Mr. Bustos' violation of his probation was willful and reinstating probation would not be appropriate. It imposed the underlying six to ten-year prison sentence, noting Mr. Bustos' long criminal history and his behavior while on probation, including showing up late and under the influence for office visits or missing office visits. Mr. Bustos timely appealed.

## DISCUSSION

[¶11] Mr. Bustos argues the petition to revoke probation alleged only that he violated the conditions of his probation by leaving required treatment at Southwest Counseling prior to completion. During the evidentiary hearing on the petition to revoke, the State presented evidence concerning his failure to complete required treatment and also evidence that he violated his probation in other ways. This included evidence that he used methamphetamine in his father's garage, failed to cooperate with his probation officer, missed scheduled office visits, ran from the probation office, and received additional criminal charges (hereinafter collectively referred to as other probation violations). The State relied on the other probation violations during disposition to seek imposition of the underlying prison sentence. Mr. Bustos contends the State's use of the other probation violations at disposition violated his Fourteenth Amendment right to due process because he had no notice that he would have to defend against the other probation violations as they were not alleged in the petition to revoke probation.

[¶12] We normally review probation revocation decisions for an abuse of discretion and constitutional claims de novo. *Fredrick v. State*, 2024 WY 121, ¶ 9, 559 P.3d 588, 592 (Wyo. 2024) (citations omitted). Here, however, because Mr. Bustos did not raise his due process claim or object to the State's use of the other probation violations in the district court, our review is for plain error. *Ridinger v. State*, 2021 WY 4, ¶ 32, 478 P.3d 1160, 1168 (Wyo. 2021) (applying plain error standard to defendant's argument that prosecutor's comments during closing argument implicated his right to remain silent because he failed to object to the comments at trial (citation omitted)). "To satisfy the plain error standard,

3

Mr. [Bustos] must show (1) the record is clear about the incident alleged as error; (2) a violation of a clear and unequivocal rule of law; and (3) he was denied a substantial right resulting in material prejudice." *Id.* ¶ 33, 478 P.3d at 1168 (citation omitted). We will reverse a district court's decision under the plain error standard of review "only if it is so plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue." *Young v. State*, 2016 WY 70, ¶ 14, 375 P.3d 792, 796 (Wyo. 2016) (quoting *Town v. State*, 2015 WY 78, ¶ 9, 351 P.3d 257, 260 (Wyo. 2015)).

[¶13] Mr. Bustos has satisfied the first prong of the plain error test because the record clearly reflects the State's reliance on the other probation violations at disposition. *Ridinger*, ¶ 34, 478 P.3d at 1168. He has not, however, satisfied the second prong as he has failed to show a violation of a clear and unequivocal rule of law.

[¶14] "Probation revocation proceedings are governed by W.R.Cr.P. 39." *Sinning v. State*, 2007 WY 193, ¶ 9, 172 P.3d 388, 390 (Wyo. 2007). Under Rule 39, the State initiates probation revocation proceedings by filing a petition for revocation, "setting forth the conditions of probation which are alleged to have been violated by the probationer and the facts establishing the violation." W.R.Cr.P. 39(a). If the probationer "denies the allegations of the petition, or declines to admit or deny, the court shall set the matter for hearing." W.R.Cr.P. 39(a)(4). A probation revocation hearing consists of two parts. *Sinning*, ¶ 9, 172 P.3d at 390 (citation omitted). "The first part, the adjudicatory phase, requires the district court to determine by a preponderance of the evidence whether a condition of probation was violated." *Fredrick*, ¶ 24, 559 P.3d at 595 (quoting *Mapp v. State*, 929 P.2d 1222, 1226 (Wyo. 1996)). If the court finds a violation of a condition of probation, it proceeds to the second part, the dispositional phase, where it determines the appropriate punishment. *Farthing v. State*, 2021 WY 114, ¶ 11, 496 P.3d 783, 786 (Wyo. 2021).

[¶15] Because probation revocation proceedings may result in the loss of liberty, the Fourteenth Amendment right to due process applies to them. *Fredrick*, ¶ 24, 559 P.3d at 595; *Gailey v. State*, 882 P.2d 888, 891 (Wyo. 1994). Relevant here:

> Due process requires that a defendant be given written notice of the claimed violations of probation. *Shaw v. State*, 998 P.2d 965, 967 (Wyo. 2000). In probation revocation proceedings, notice pertains to the charges regarding a violation of the conditions of probation, ***not to matters discussed during a dispositional phase***. W.R.Cr.P. 39(a)(4); *Gailey v. State*, 882 P.2d 888, 892 (Wyo. 1994).

*Sweets v. State*, 2003 WY 64, ¶ 11, 69 P.3d 404, 406 (Wyo. 2003) (emphasis added).

4

[¶16]   In this case, Mr. Bustos received written notice of the claimed violation of his probation.  In the petition to revoke probation, the State alleged he violated his probation by failing to complete Level 3.5 inpatient treatment at Southwest Counseling as required by his probation officer.  The district court found that, as alleged in the petition, Mr. Bustos was required to attend inpatient treatment, he did not complete it, and as a result he was in violation of a condition of his probation.  The court confined its holding—that Mr. Bustos violated a condition of his probation—to the charged allegation.[1]  Mr. Bustos does not dispute that the petition provided him adequate notice or that the district court's decision that a violation occurred was based solely on the charged allegation.  Instead, Mr. Bustos contends that a due process violation occurred when the State relied on the other probation violations, during the dispositional phase of the probation revocation hearing, to argue against reinstating his probation.

[¶17]   In the dispositional phase of a probation revocation proceeding, the district court must deliberate not only upon the violation, but also on the reasons the conditions were originally imposed and the circumstances surrounding the violation; after considering all these factors, the court then determines the appropriate consequences of the probationer's violation.  *Sweets*, ¶ 16, 69 P.3d at 407 (citing *Mapp*, 929 P.2d at 1226).  Here, the State referenced Mr. Bustos' conduct—including continued methamphetamine use, fleeing the probation office after testing presumptive positive for methamphetamine, new criminal charges, escape from treatment, and lack of engagement in probation—and the original purpose of probation being treatment to argue that Mr. Bustos' underlying prison sentence should be reinstated.  Because the other probation violations were raised during the dispositional phase of his probation revocation hearing to inform the court's discretionary sentencing decision—and not as grounds for finding a violation of probation—Mr. Bustos had no right to notice of them in the petition to revoke and his Fourteenth Amendment right to due process was not violated.  *Sweets*, ¶¶ 9, 11, 69 P.3d at 405–06 ("A district court's decision to revoke probation and impose a sentence is discretionary[.]"  The Fourteenth Amendment's due process notice requirement applies to "claimed violations of probation . . . , not to matters discussed during a dispositional phase." (citations omitted)).

---

[1] The district court revoked Mr. Bustos' probation in the adjudicatory phase, before making its finding of willfulness in the dispositional phase.  While Mr. Bustos does not raise an issue regarding the timing of the district court's decision to revoke probation, we note the decision to revoke probation is normally made in the dispositional phase upon a finding that the violation was willful.  *Hammell v. State*, 2025 WY 4, ¶ 8, 561 P.3d 776, 778 (Wyo. 2025) ("In the adjudicatory phase, the State [must] prove . . . the defendant . . . violated a term of . . . probation.  If a violation is proven, the court . . . determine[s] . . . punishment in the dispositional phase.  Ordinarily, revocation is justified only when the violation was willful, a determination . . . [made] during the dispositional phase." (citations and quotation marks omitted)); *Robinson v. State*, 2016 WY 90, ¶ 20, 378 P.3d 599, 606 (Wyo. 2016) ("In addition to the requirements of W.R.Cr.P. 39, we have said that in order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must either be willful or threaten the safety of society.  The willfulness of a probationer's violation is addressed during the dispositional phase." (quoting *Miller v. State*, 2015 WY 72, ¶ 8, 350 P.3d 742, 745 (Wyo. 2015))).

## *CONCLUSION*

[¶18] We affirm the district court's order revoking Mr. Bustos' probation and imposing the underlying prison sentence.